[Civil No. 1403. Filed February 13, 1915.]

[146 Pac. 491.]

## JOHN WADIN, Appellant, v. MAX CZUCZKA, Appellee.

1. CONTRACTS—QUESTION FOR JURY.—What the parties actually agreed to in an oral agreement to build a house, in case of dispute as to terms, is a question of fact for the jury.

2. TRIAL—PROVINCE OF JURY—CONFLICTING EVIDENCE.—Where there is conflict in the evidence, it is within the province of the jury to weigh the testimony and give credit where they believe credit should be given.

3. CONTRACTS—BREACH—COMPLAINT.—A complaint for damages for breach of contract need only contain a concise statement of facts constituting the cause of action, and the dry formalism of a common-law pleading may be discarded with safety.

4. PLEADING—PRESUMPTIONS IN FAVOR OF.—Every reasonable intendment will be made to sustain a pleading.

5. PLEADING—GENERAL DEMURRER.—If a cause of action for breach of contract may be reasonably inferred from its averment, a general demurrer should be overruled.

6. CONTRACTS—BREACH—COMPLAINT.—In an action for damages for breach of contract, the complaint need only state the making of the contract, the obligation assumed, and the breach, superadding a statement of the amount claimed and a prayer for judgment.

7. CONTRACTS—COMPLAINT FOR BREACH—SUFFICIENCY.—A complaint alleging that defendant agreed to construct and to furnish all labor and materials for the erection of a dwelling-house for the plaintiff, according to plans and specifications submitted, and said dwelling-house was to be erected on lots owned by plaintiff and for a fixed agreed price, is sufficient as against a general demurrer.

8. CONTRACTS — MUTUALITY — IMPLIED OBLIGATION. — Mutual consent is requisite to the creation of a contract, but it becomes binding when a proposition is made on one side and accepted on the other, and the obligation to show mutuality may be implied.

9. CONTRACTS—CONSIDERATION—IMPLIED AGREEMENT.—A consideration may be agreed on as well impliedly as expressly.

10. ESTOPPEL—CONTRACTS—PERFORMANCE—ESTOPPEL TO URGE OBJECTION.—After performance of a contract by a building contractor, he is not in a position to urge lack of mutuality or want of consideration for doing the thing he agreed to do.

11. APPEAL AND ERROR—PARTIES ENTITLED TO ALLEGE ERROR.—Evidence, admitted at the instance of a party, may not be complained of by him.

12. CONTRACTS—ACTION FOR BREACH—EVIDENCE—PLANS AND SPECIFI-
CATIONS.—In an action for breach of contract to erect a dwelling-
house, the admission in evidence of the plans and specifications is not
error, where they were made a part of the contract by reference and
clearly identified.

13. CONTRACTS—BUILDING CONTRACT—ACTION FOR BREACH—EVIDENCE.—
In an action against building contractor for breach of contract, in
that the house constructed cost more than the agreed price, evidence
as to the disposition of the money paid by the plaintiff to the con-
tractor is relevant on the question of what the house actually cost.

14. TRIAL—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.—Objections
to particular instructions are cured where the objections are over-
come in other instructions.

15. COSTS—SUPERIOR COURT—FEES OF JURORS.—Under Civil Code of
1913, paragraph 638, costs in the superior courts do not include
jurors' fees, as such fees are paid by the county, as provided by
paragraph 3207.

[As to right of building contractor to recover upon substantial
performance of his contract, see note in 134 Am. St. Rep. 678.]

APPEAL from a judgment of the Superior Court of
the County of Yuma. Frank Baxter, Judge. Judgment
modified.

The facts are stated in the opinion.

Mr. Thos. D. Molloy, for Appellant.

Mr. Clement H. Colman, for Appellee.

FRANKLIN, J.—The plaintiff in the court below, and the
appellee here, being the owner of a lot in the town of Yuma,
caused an architect to prepare plans and specifications for a
dwelling-house to be erected thereon. The appellant, who was
defendant below, is engaged at Yuma in the business com-
monly designated as building contractor.

The plaintiff submitted the plans and specifications to de-
fendant for the purpose of receiving a tender or offer on the
part of the defendant as to the price for which he would agree
to furnish all the labor and material and construct the house
according to the plans and specifications submitted. After
retaining the plans and specifications for a period of about
two weeks, the defendant made an offer to build the house
and furnish the labor and materials therefor, according to the

plans and specifications, for the sum of $2,715. After some bargaining as to the cost of the house, the plaintiff finally accepted the offer and directed the defendant to go ahead and build it. The defendant said:

"Czuczka, in case there should be a possible chance that I can make it a little cheaper, I will give you the benefit of it."

The defendant thereupon began the construction of the house and the furnishing of the labor and material therefor, and completed the same according to the plans and specifications. He also furnished some extras; that is to say, additional work and material over and above the amount of work and material required by the plans and specifications. No point is made concerning the extras, for the jury, in the award to the plaintiff, deducted therefrom the reasonable value of the same.

The action is grounded on an alleged breach of the contract. In abridgment, the complaint states: That plaintiff and defendant, in the month of November, 1912, at Yuma, Arizona, entered into a verbal contract whereby the defendant agreed to construct, and to furnish all labor and materials for the erection of, a dwelling-house for the plaintiff according to certain plans and specifications submitted to defendant. That said dwelling-house was to be erected on certain lots of land owned by plaintiff in the town of Yuma, and for the fixed and agreed price of $2,715. Full performance of the agreement on the part of plaintiff is alleged, and the failure of the defendant to construct and complete the house within the contract price. That plaintiff was obliged to pay for labor and materials used in the construction of said house the sum of $552.13 in excess of the contract price therefor, for which amount judgment is asked.

Defendant answered by way of general demurrer and general denial, also interposing with a counterclaim and cross-complaint; the counterclaim and cross-complaint being pleaded by reason of a difference between the parties arising over their differing claims as to what was the contract in dispute. It was the claim of defendant: That the contract was a different one from that alleged by plaintiff. That by the agreement between them the defendant was merely employed to superintend the construction of the building and to use his best skill and knowledge in purchasing material and furnishing

labor therefor, and generally direct the construction, so as to keep the cost of the building to plaintiff down to the minimum, and that for such services he was to receive a reasonable compensation. That the minimum cost of the building was $3,345. Plaintiff answered the counterclaim and cross-complaint.

The demurrer was overruled, and the issues arising on the complaint and cross-complaint were submitted to the jury under instructions from the court. The jury awarded plaintiff the sum of $450, upon which verdict judgment was entered.

The appeal is from the judgment and an order overruling a motion for a new trial, and also from an order denying defendant's exceptions to plaintiff's statement of costs. The terms of the contract in question were not reduced to writing, and were in dispute. They were left to oral proofs to determine what the parties said and did, and what they intended should be understood thereby. It therefore became a question of fact for the jury.

In *McKenzie* v. *Sykes,* 47 Mich. 294, 11 N. W. 164, the court said:

"It is for the court to interpret the written contracts of parties, for when they have assented to definite terms and stipulations and incorporated them in formal documents, the meaning of these, it is supposed, can always be discovered on inspection. Nothing which is within the purview of the contract is left in doubt; and there is, of course, nothing to submit to the jury. . . . But, where the terms of a negotiation are left to oral proofs, the question what the parties said and did, and what they intended should be understood thereby, is single, and cannot be separated, so as to refer one part to the jury and another part to the judge; but in its entirety the question is one of fact."

So in the case of *Gannon* v. *Brady Brass Co.,* 82 N. J. L. 411, Ann. Cas. 1913C, 1308, 81 Atl. 727:

"The cases holding that, where no attempt has been made to reduce the terms of a contract to formal language, the intention of the parties, as gathered from what they said and did, is a question of fact for the jury, are very numerous."

For numerous cases applying the rule, see note to the last case cited, to be found in Ann. Cas. 1913C, at page 1310.

We lay aside the assignments of error involving the insufficiency of the evidence to sustain the verdict. It is sufficient to say that there was a sharp conflict in the evidence introduced on both sides of the question. It was therefore within the province of the jury to weigh the testimony and give credit where they believed credit should be given. It is sufficient that the verdict is supported by substantial evidence.

The chief contention is that the complaint fails to state a cause of action for the reason that the contract pleaded shows a lack of mutuality and consideration, and also a failure to assign any breach thereof.

The requirements of a complaint for damages based upon a breach of contract are very simple. No particular phraseology is imperative. The absence of words usually employed in such actions is not fatal. In a word, the dry formalism of a common-law pleading may be discarded with safety. A concise statement of the facts constituting the plaintiff's cause of action is the measure by which to determine the sufficiency, with an injunction placed upon the court by the law to disregard any error or defect in the pleading which shall not affect the substantial rights of the parties.

Every reasonable intendment will be made to sustain the pleading, and, if a cause of action may be reasonably inferred from its averments, a general demurrer should be overruled. Looking at the complaint with a friendly eye, and with the intention of sustaining it, if possible to do so, as against an attack by general demurrer, does it allege facts sufficient to constitute a cause of action? In a case of this character it is only necessary to state the making of the contract, the obligation thereby assumed, and the breach, superadding a statement of the amount claimed and a prayer for judgment. If such facts appear by direct averment, or by a necessary and unavoidable inference from the facts stated, it should be upheld. We think it necessarily and unavoidably follows, from the facts stated in this complaint: That an agreement was entered into by the parties. That by virtue of the agreement the plaintiff had a right to have the house constructed, and the labor and materials furnished, for the sum of $2,715. That there was a duty or obligation connected with that right resting on the defendant to construct the house for plaintiff according to the plans and specifications, and furnish the

labor and material for the price agreed upon. That the defendant failed to comply with such duty, to the damage of plaintiff.

Mutual consent is, of course, requisite to the creation of a contract, but it becomes binding when a proposition is made on one side and accepted on the other. 2 Kent, Com., p. 794.

"To show mutuality, the obligation may be implied as well as express. Although on its face and by its express terms the contract is obligatory on one party only, yet if the intention of the parties and the consideration upon which the obligation is assumed is that there shall be a correlative obligation on the other side, the law will imply it." 9 Cyc. 333.

"Where the parties assume to make a contract in which a promise is the consideration for a promise, and analysis shows that one of the promises does not impose any legal duty upon the party making it, such promise is not a consideration for the other promise. . . . It is not necessary, however, that the contract should impose obligations expressly upon each party. It is sufficient if they are imposed by the legal effect of the contract." 1 Page on Contracts, sec. 304.

A consideration may be agreed upon as well impliedly as expressly. *Id.*, sec. 277; *Bailey et al.* v. *Leishman et al.*, 32 Utah, 123, 13 Ann. Cas. 1116, 89 Pac. 78. It is too clear for argument here that upon performance by defendant the plaintiff was obligated to pay him $2,715, and likewise upon his failure to perform he must respond in damages to plaintiff occasioned by such failure.

Aside from this, there is another view that destroys the contention. If defendant was in a position to successfully resist performance before he began to construct the building in a way that bound him to complete it, he is certainly not in that position, after performance, to urge a lack of mutuality and the want of a consideration for doing the thing which he agreed to do.

At the trial the defendant contended, with much vigor and insistence, that the making of such a contract orally was highly improbable, in the ordinary course of business. To this end a great deal of evidence *pro* and *con* was introduced. The real issue in the case was the making of the contract and its terms, not the improbability of the parties entering into such an agreement verbally.

The evidence on this point should have been so restricted, leaving defendant to address that feature of the case in argument to the jury. However, it having been gone into at the invitation of the defendant, he may not complain that error, if any, was thereby committed.

Error is urged because the plans and specifications were admitted. It is not quite clear from the record that defendant objected to their admission. But, even so, they were made a part of the contract by reference and clearly identified as those submitted to defendant for his tender and used by him subsequently in the construction of the building.

It appears that during the progress of the work the plaintiff had made certain payments of money on account. On the trial the plaintiff inquired into the disposition of this money, and as to whether it was used by the defendant in paying for labor and materials used in the building. This was most important to know about in ascertaining what the building did cost. Likewise there was no error in the refusal of the court to give an instruction requested by defendant that the jury disregard all the evidence pertaining to defendant's disposition of such moneys. Some objections are urged to particular instructions given at request of plaintiff, but such objections are overcome in other portions of the charge. Taken as a whole, the instructions given fairly state the law applicable to the facts of the case.

The last contention of defendant must be sustained. He seasonably objected to an item of $72 for jurors' fees, taxed as costs. Costs in the superior court do not include jurors' fees. Paragraph 638, Ariz. Rev. Stats. 1913. Jurors, for their attendance on the court, are paid by the county. Paragraph 3207, Ariz. Rev. Stats. 1913.

The judgment of the lower court is modified by deducting therefrom the sum of $72 erroneously taxed therein as costs, and, as so modified, the judgment is affirmed. The judgment of the court below being against the appellant, and the judgment of this court being also against him, but for a less amount, it is further ordered, in compliance with paragraph 633, Revised Statutes of Arizona of 1913, that said appellant be and he is hereby adjudged to pay the costs of the court below, but that he have and recover his costs in this court.

ROSS, C. J., and CUNNINGHAM, J., concur.