[Civil No. 1707. Filed June 14, 1919.]

[181 Pac. 462.]

RICHARD V. DEY, Appellant, v. BEN C. HILL, Appellee.

1. WORK AND LABOR—QUANTUM MERUIT—CONTRACT PRICE.—In action on *quantum meruit* for reasonable value of services rendered under a contract, recovery cannot be had for a greater amount than the contract price.

2. APPEAL AND ERROR — THEORY OF CASE—PLEADINGS.—Generally, a party is bound in the appellate court as to the nature and form of the action or proceeding by the theory on which the pleadings were construed and the action or proceeding was tried in the court below.

3. ATTORNEY AND CLIENT — ACTION FOR COMPENSATION — EVIDENCE—ABANDONMENT OF WRITTEN CONTRACT.—In action by attorney having written contract with client specifying compensation for rea-

sonable value of services, evidence *held* to show abandonment_ of written contract.

4. ATTORNEY AND CLIENT—ACTION FOR COMPENSATION—WRITTEN CONTRACT—REASONABLE VALUE OF SERVICES.—In attorney's action for reasonable value of services performed, tried on theory that client was indebted therefor, instead of on a written contract entered into between the parties specifying compensation, where there was evidence tending to show that such contract had been abandoned and a new contract entered into, court did not err in submitting case upon theory that client was liable for reasonable value of services.

5. TRIAL—SUBMISSION OF ISSUE — REQUEST.—Where attorney having had written contract with client sued for reasonable value of services, and case was tried on such theory, and evidence introduced tending to show that contract had been abandoned, client cannot complain of court's failure to submit question of whether contract had been abandoned, upon his failure to make request therefor.

APPEAL from a judgment of the Superior Court of the county of Pima. S. L. Pattee, Judge. Affirmed.

Mr. Frank E. Curley, for Appellant.

Mr. Ben C. Hill, for Appellee.

ROSS, J.—Appellee, who is a practicing attorney in the courts of the state, sued for professional services rendered appellant between January 19, 1917, and March 23, 1918, alleging their reasonable value to be $7,000, of which he had been paid $4,000, leaving a balance due him of $3,000. The appellant's answer admits the services were rendered him as alleged, but denies they were of the reasonable value of $7,000 or of any value in excess of $4,000, and denies any indebtedness whatever. The case was tried before the court and a jury, and a verdict and judgment for the full amount demanded was the result.

The appeal raises but one question, the correctness of an instruction on the measure of damages. The only issue made by the pleadings was the reasonable value of the services rendered by appellant. The case throughout was tried and submitted on that theory. Appellee testified to the character, amount and value of his services, and introduced other testimony of their value. The value so established ranged from $7,500 to $10,000, $3,500 of which was credited to what is

hereinafter designated as the Laurel Canon case. The appellant chose to rest upon the case made by appellee, and introduced no evidence. In the course of appellee's testimony, who was the only witness to the fact of his employment and the amount and kind of services he had rendered, it developed that the relation of attorney and client was originally established by a written contract in the form of a letter from appellee to the agent of the appellant, the letter being dated January 19, 1917. The letter reads:

"In re Richard V. Dey v. Laurel Canon Mining Co.

"I hereby confirm my oral proposition regarding employment in the above-entitled matter. I will undertake the work necessary in this matter in the trial court, and take charge of the preparation of the case for trial, for a fee of $300.00 and necessary traveling expenses. It is expressly understood that this fee shall not cover any work in the Supreme Court, in the event an appeal is taken by either party to the suit."

The effect of this contract upon the amount appellee was entitled to recover was not raised by the answer, nor did the appellant request any instruction as to its effect, and accordingly the court instructed the jury to find the reasonable value of all the services rendered by appellee to appellant.

It was after an adverse verdict and upon his motion for a new trial that appellant first raised the point that the contract price was the highest measure of damages recoverable, and that the jury should have been so instructed. In support of his position, he invokes the well-settled law that permits a party to a fully executed contract to sue on *quantum meruit,* and to recover for his services their reasonable value, but in no event more than the contract price. 40 Cyc. 2853; *Cunningham* v. *Elvins* (Mo. App.), 194 S. W. 515; *Daniels* v. *McDaniels,* 184 Mo. App. 354, 171 S. W. 14; *Owen* v. *Hadley,* 186 Mo. App. 1, 171 S. W. 973.

If the express contract set forth above was not subsequently modified or abrogated and another contract substituted for it, the point made by appellant is well taken. But if after appellee entered upon the performance of the written contract the parties, either expressly or by implication arising from their actions and conduct, abandoned it for other and different arrangements, his exceptions are without merit.

As tending to show that the written contract was not intended to be adhered to, either as to the compensation therein

stated or as to the amount and kind of services to be rendered
by appellee, we would suggest: (1) That the pleadings are
silent as to any written contract fixing appellee's compensa-
tion. The complaint alleges a cause of action for the reason-
able value of appellee's services between the dates of his
employment, fixing it at $7,000. The answer fixes the reason-
able value of appellee's services at $4,000 and no more. The
case was tried upon the theory that the reasonable value of
appellee's services was the *only* issue, and the court charged
the jury upon that theory without any protest or request
from appellant indicating dissatisfaction with the instruction.

"As a general rule, a party is bound in the appellate court,
as to the nature and form of the action or proceeding, by the
theory on which the pleadings were construed and the action
or proceeding was tried in the court below." 3 C. J. 723,
§ 620; *Copper State Mining Co.* v. *Kidder, ante,* p. 224, 179
Pac. 641.

While action under this rule might not go to the extent of
abrogating the agreed price for appellee's services and permit
a recovery for a larger sum, it does, however, tend to show
that appellant did not intend to hold appellee to that com-
pensation, and we think we are authorized to treat it as some
evidence of the abandonment of the written contract. (2)
But besides, "the theory on which . . . the action or proceed-
ing was tried in the lower court," the testimony on behalf
of appellee tended to show that the written contract was by
the parties abandoned and another contract substituted for it.

Appellee testified: That he "had been employed to repre-
sent the defendant, Dey, generally in the state of Arizona, and
in connection with certain litigation in which said Dey *was*
and *thereafter* became involved. (By this language appellee
conveys the idea that his whole service was to be compen-
sated for as one contract.) That under such employment
substantially all of his time was devoted to the business and
litigation of said Dey, from January 19, 1917, to March 23,
1918," and that part of the services for which he was suing
was services rendered in the preparation and trial of the
Laurel Cañon case; that on about March 5, 1917, appellant
authorized him to appoint Richard W. Sprague, an attorney
of Tucson, to assist in preparing a motion for a new trial in
the Laurel Cañon case, and in the preparation of other suits
about to be brought; that on March 15th he wired appellant

that he had been unable to make satisfactory arrangements regarding his fees or the employment of Sprague with appellant's agent, "and that, on account of the mix-up and condition of affairs at that time, he would expect an immediate payment of $1,000, to apply on *general fees in all matters*"; that on March 16, 1917, appellant wired him the $1,000, and placed him in "sole charge of all matters"; that in conversation with Dey in September, 1917, in New York, "it was agreed between himself and Mr. Dey that no definite fee should be agreed upon for the amount of work required of him, but that the charge should be reasonable in view of all work eventually required of him," he to pay Sprague's fee.

This testimony stands uncontroverted, and tends to support the theory on which the case was tried and submitted, to wit, that the first or written contract concerning appellee's fee for services in the Laurel Cañon case was abandoned, and that there was substituted for it a contract that appellee should be paid the reasonable value of his services in that case and in all other matters. In other words, in view of the accruing of other litigation and legal business, after the contract of January 19th, so that practically all of appellee's time was occupied and would be occupied in caring for it, the whole of appellee's services, including the Laurel Canon case, would be paid for on the basis of their reasonable value. Other contingencies having arisen after the first contract, it is conceivable that the parties concluded the terms of their agreement as originally made were not fair and just, and that a more equitable arrangement would be not to pay for the services in piecemeal at a fixed price agreed upon in advance, but to consider them all together as a running account to be settled at their reasonable value when the services were ended or the relation of attorney and client severed. Payments were made appellee as upon a general running account, $1,000 at a time, amounting to $4,000, and no request that same or any part thereof be applied on the contract of January, 1917, although that was due, if the contract was not abandoned, before any other item of service was due.

In view of the evidence and the theory upon which the case was tried, we conclude the court committed no error in submitting to the jury the determination of the reasonable value of appellee's services. While it may not be clear that there was a substitution of contracts so that the court could so

decide as a question of law, the conduct of the trial, the action of the parties under the contract, and the testimony all point in that direction. The appellant was perhaps entitled to an instruction, if he had so requested, submitting the question as to whether the first contract was abandoned and another substituted for it, but having wittingly or unwittingly stood by without requesting such instruction, he ought not now to be permitted to complain. In the face of the evidence, it cannot be said that the court erred in not peremptorily directing the jury, without any request, that the measure of damages for services in the Laurel Canon case was the sum fixed in the contract of January 19th, because there was substantial evidence tending to show that that contract had been abandoned and other arrangements made.

The substitution of contracts is not a novelty to the law. It may happen in, several ways; as by express agreement, by implication, or where the terms of the second contract cover the terms of the first and include new terms. *Arizona-Parral Min. Co.* v. *Forbes,* 16 Ariz. 395, 146 Pac. 504.

Finding that no prejudicial error was committed, the judgment is affirmed.

CUNNINGHAM, C. J., and BAKER, J., concur.